# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ENRIQUE MENDOZA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 7056 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| OFFICER KACZYNSKI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff has filed a lawsuit under 42 U.S.C. §1983 stemming from an assault and battery he suffered at the hands of his cellmate, Phil Prentice, when he was a detainee at Cook County Jail. He alleges that the defendant failed to protect him when Mr. Prentice threatened him. Plaintiff had accused Prentice of stealing a breakfast square, and when defendant arrived to intervene, he sought to handcuff both men before entering the cell to investigate. While defendant was handcuffing plaintiff, Prentice allegedly struck plaintiff in the head. Plaintiff filed a grievance regarding the incident – actually, multiple grievances – followed by an appeal. The defendant has moved for summary judgment, incorrectly arguing that the plaintiff's grievance and subsequent appeal were limited to a complaint about stolen property, and thus the plaintiff failed to exhaust his administrative remedies on the battery issue before filing suit.

The Prisoner Litigation Reform Act, Section 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

1

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As the Supreme Court has often observed, that language is "mandatory"; an inmate may not bring any action absent exhaustion of available administrative remedies. *Ross v. Blake*, – U.S. –, –, 136 S. Ct. 1850, 1856 (2016). The idea is to eliminate unwarranted federal-court interference with the administration of prisons by affording corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). In this case, there is no issue as to whether the plaintiff employed the administrative remedies available to him: he filed a grievance and appeal. The question is merely what those documents said or, for the purposes of the defendant's summary judgment motion, if they gave the Sheriff's Office reasonable notice of plaintiff's failure to protect claim and the opportunity to redress it before plaintiff filed a lawsuit. After review of the grievance, the appeal, and the parties' submissions, it has to be said that, for the purposes of summary judgment, they did, and the defendant's motion is denied.

## I.

### SUMMARY JUDGMENT

#### A.

#### Fed.R.Civ.P. 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe the evidence and all inferences that reasonably can be drawn from it in the light most favorable to the nonmoving party. *Allin v. City of Springfield*, 845 F.3d 858, 861 (7th Cir. 2017); *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 340 (7th Cir. 2016). But, the court makes "only

reasonable inferences, not every conceivable one." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014). Not every purported factual dispute precludes summary judgment; the dispute must be material and genuine. *Alston v. City of Madison*, 853 F.3d 901, 910 (7th Cir. 2017). A factual dispute is "genuine" only if a reasonable jury could find for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Alston*, 853 F.3d at 910 (7th Cir. 2017). If the opponent – here, the plaintiff – "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment must be granted." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797-98 (7th Cir. 2017); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court "must resist the trap of assessing the credibility of witnesses, choosing between competing inferences or balancing the relative weight of conflicting evidence." *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014). Sometimes a party makes that task difficult – perhaps by lodging speculative claims or attempting to obscure the facts, but the court must remain true to its task. *Khan v. Midwestern Univ.*, 879 F.3d 838, 840 (7th Cir. 2018).

**B.**

**Local Rule 56.1**

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a summary judgment proceeding. *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir.2012). Local Rule 56.1 requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the ... party

contends there is no genuine issue and that entitle the ... party to a judgment as a matter of law."
Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643 (7th Cir.2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.,* 423 F.3d 627, 633 (7th Cir.2005).

The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment," Local Rule 56.1(b)(3)(C); *Ciomber,* 527 F.3d at 643. Again, each response, and each asserted fact, must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir.2009); *Bay Area Business Council, Inc.,* 423 F.3d at 633.

The district court is entitled to enforce strict compliance with its Local Rules regarding summary judgment motions. *Kreg Therapeutics, Inc. v. Vital Go, Inc.*, 919 F.3d 405 (7th Cir. 2019); *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015). Responses and facts that are not set out properly and appropriately supported in a Rule 56.1 filing will not be considered. *See Shaffer v. American Medical Association,* 662 F.3d 439, 442 (7th Cir.2011). Moreover, when a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner the rule demands, those facts may be deemed admitted for purposes of the motion. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015); *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).

## II.

## DISCUSSION

No particular level of specificity in a grievance is required. It need not be "a model of clarity and specificity; it not a summons and complaint that initiates adversarial litigation." *Trimble v. Grounds,* 2016 WL 7337956, at *2 (S.D. Ill. 2016). The purpose of a grievance is, quite simply, to advise prison management of a situation that could harm the good order and discipline of the institution so that remedial steps can be taken by the officer responsible for such remedies. *Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010). Thus, a prisoner's grievance need only include sufficient specificity to alert prison officials to a problem such that the officials have a fair opportunity to address it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See especially* Judge Easterbrook's Opinion in *Strong v. David*, 297 F.2d 646 (7th Cir. 2002). *See also*, Antonieta Pimienta, *Overcoming Administrative Silence in Prisoner Litigation: Grievance Specificity and the "Object Intelligibly" Standard*, 114 Colum. L. Rev. 1209, 1212 (2014).

Still there isn't much in the way of facts here. Three days after the "breakfast square" and assault incident, the plaintiff filed a grievance. Any fair reading of the grievance reveals that Mr. Mendoza was complaining that his cellmate had "assaulted" and struck him. The grievance understandably sought to put the matter in context. Equally obvious was, or should have been, the fact that the grievance was written by a detainee who was not fluent in English.

> On [May 16, 2017] inmate Phil (my cell mate) stole my breakfast. I called to the C.O. on duty who came to the cell and explaned [sic] that he did that and threatened me. The officer told me he would put me in General Population. I did not want G.P. The officer had me pack my property while my cell mate argued with him. The C.O. locked the door on us. When I put my hands in the door to be cuffed Phil assaulted me. I told the officer to get my property. They did not and more than $200 of property was stolen from me.

5

[Dkt. #48-4](Parentheses in original).

The grievance form included a number of simple instructions; the only one we need mention here is: "The grievance form must not contain more than one issue." [Dkt. #48-4]. The response to the grievance from the Cook County Sheriff's office is somewhat illegible, but it unquestionably discussed and focused on the grievance's concern with the altercation with Mr. Mendoza's cellmate. Thus, it says:

> CUD has been notified. [illegible] of video an [sic] *altercation in cell* can be observed. Staff responds and then [illegible] *a fight in the cell*. Detainee Mendoza is removed from cell *and sent for medical attention*. All property that was identified as Detainee Mendoza's was secured and removed from cell.

[Dkt. #40-3, Page 7/8](Emphasis supplied).

Notably, the Sheriff's Office understood that the focal point of the grievance was the altercation between Mr. Mendoza and his cellmate and thus categorized the grievance as "110-Inmate on Inmate (physical)." [Dkt. #40-3, Page 7/8]. When the determination was returned to plaintiff, under "Inmate's Request for Appeal," plaintiff wrote: "This does not address the issue of my items being stolen before it was secure *or the officer shutting me in*." [Dkt. #40-3, Page 8/8] (Emphasis supplied).

The basis for the defendant's motion for summary judgment is simple. Defendant contends that the plaintiff did not raise the issue of failure to protect in either the grievance or the reasons for appeal. [Dkt. #39, at 5; #52, at 3, 5]. According to the defendant, the plaintiff's grievance was about his stolen property and nothing more. [Dkt. #39, at 5]. But, as we have shown, that is a plainly incorrect interpretation, and as the defendant presents it – and as the facts reveal – the defendant's argument is unconvincing. In the grievance, the plaintiff said that he was attacked by his cell mate

6

when the defendant handcuffed him. And, in the appeal, the plaintiff said that the resolution failed to address the officer shutting him in the cell with his cellmate after the initial altercation.

How much more specific must a grievance be? Neither defendant nor plaintiff say; nor do they cite any case law in support of their respective views. But, it cannot be ignored that in cases like this, we are necessarily dealing with an inmate who speaks little English. Indeed, grievances are often prepared by those who lack facility in the English language and in any event; indeed, they are prepared by those caught up in the criminal justice system and who necessarily lack the kind of linguistic expertise that the defendant obliquely demands. But, the law cannot and ought not ignore reality; realities must dominate the judgment. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 774 (1984). *See also* Holmes, The Common Law 1 (Howe Ed. 1963)("The life of the law has not been logic: it has been experience.").

Neither a grievance nor a response is to be measured by the criteria that one might employ in assessing the meaning of documents drafted by a skilled lawyer. Thus, in cases like this, imprecision often dominates. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010); *Vitello v. United States*, 425 F.2d 416, 425 (9th Cir. 1970).

Neither defendant nor plaintiff cite any case law on this point. Defendant thinks a grievance has to be quite specific – how specific it does not say. In reality, all a grievance has to do is to put the officials – the Sheriff's Office, in this case – on notice of the inmate's claims. *See, e.g., Nelson v. Miller*, 570 F.3d 868, 876 n.4 (7th Cir. 2009)(noting that the response to plaintiff's grievance showed that officials understood what the grievance entailed and thus they were put on notice of his claims); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir.2004) (*en banc*) (finding that prisoner's grievance—which stated that "[t]he administration don't [sic] do there [sic] job. [A sexual assault]

7

should've never [sic] happen again."—although "at the border of intelligibility," sufficed to put defendants on notice of prisoner's claim that defendants failed to protect plaintiff from sexual assault); *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002)(grievance must clearly give notice of claim and reasonably trigger attempt to resolve it).

To the extent the defendants believe or even suggest that more is required, they are simply mistaken. We cannot say in this case that as a matter of law in a summary judgment proceeding presenting the issues this case presents that the grievance and the appeal were insufficient to alert the Sheriff's Office to the claim that defendant had failed to protect him. To argue otherwise is to completely ignore the statement, "[w]hen I put my hands in the door to be cuffed Phil assaulted me."[1]

Furthermore, the fact that the grievance clearly covers the assault and not just the stolen property is underscored by the fact that the Sheriff's Office categorized the incident, not as a stolen property incident as the defendant does now, but an inmate-on-inmate physical assault. And, with the Sheriff's Office having categorized the incident as such, an appeal that complained of the officer shutting the plaintiff in with his eventual assailant was enough to continue to put the Sheriff's Office on notice, at least for the purposes of this summary judgment motion.

---

[1] Ignoring that sentence is apparently the tack defendant has chosen to take, as the only portion of the grievance that the defendant quotes in its opening brief, Local Rule 56.1 filing, or its reply brief is: "They did not and more than $200 of my property was stolen from me." [Dkt. # 52, at 3]. Context counts. After all, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425 (1918). The defendants are not at liberty to ignore context. *See Thompson v. Lance Cope*, _F.3d_ (7th Cir. 2018); *Schlaf v. Safeguard Property LLC*, 899 F.3d 459 (7th Cir. 2018); *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 2017 WL 2731285, at *2 (N.D. Ill. 2017).

In his reply brief, defendant tells us that grievances about more than one issue "violate the grievance protocol: a grievance form must not contain more than one issue." [Dkt. # 52, at 4-5]. The defendants offer no citation to any protocol, and while the instructions do limit grievances to a single issue, this argument ought to have been raised in the opening brief, as well as in the defendant's statement of facts. Arguments raised for the first time in a reply brief are deemed waived. *Carr v. Illinois State Police*, 758 F. App'x 556, 558 (7th Cir. 2019); *Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524, 534 n.11 (7th Cir. 2019); *Padula v. Leimbach*, 656 F.3d 595, 605 (7th Cir. 2011). And for sound reasons. Courts have characterized this tactic in a variety of ways—all negative. Blind-siding, gamesmanship, and sandbagging are the most commonly used epithets. Regardless of the name applied, the gambit has no place in the judicial system. *Cf., United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976)(condemning "gamesmanship in getting the last word"); *Pike v. Caldera*, 188 F.R.D. 519, 537 (S.D. Ind. 1999). Loading-up in a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based. In addition to being unfair to one's opponent, the tactic of saving what is claimed to be significant for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides. *Cf., Adamson v. California*, 332 U.S. 46, 59 (1947) (Frankfurter, J., concurring); *Monco v. Zoltek Corp.,* 317 F. Supp. 3d 995, 1001 (N.D. Ill. 2018).

And facts that are not properly set forth in a movant's Local Rule 56.1 statement need not be considered, *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015), even if they are raised in a memorandum of law. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 947 (7th Cir. 2006).

In any event, given what the Sheriff's Office clearly thought the grievance was about – inmate-on-inmate physical assault – if the single issue rule were applied, that single issue would have been the assault/failure to protect, not property theft.

The defendant throws one more consideration into the mix. At his deposition last August, at one point, the plaintiff testified:

> Q. You received a response -- so you received a response, but you didn't feel that addressed your issue because you write in the appeal this does not address the issue of my items being stolen?
>
> A. It did not address it in that they stole food from me, and I was given nothing but papers.
>
> Q. It says, before it was secure or that the officer held me in. And then so here you felt that it was not complete because they didn't respond about the stolen property; is that correct?
>
> A. Yes.
>
> Q. And did you not mention Defendant Kaczynski about failing to protect you in your appeal?
>
> A. l'm not seeking any claims for failure to protect me but rather for the loss of my food.
>
> Q. So in the grievance you're not talking about the failure to protect you. You're talking about the loss of your food?
>
> A. Yes.
>
> Q. So you didn't mention – that's why you didn't mention Officer Kaczynski?
>
> A. Yes.

[Dkt. #40-2, at 61-62]. Defendant argues that this testimony confirms that plaintiff wasn't grieving the failure to protect, but only the stolen food.

That's too clever by half and demonstrates, at least for purposes of the present summary judgment proceeding, that a person not particularly skilled in English can be led to say something that is belied by the actual documents. We have seen that the grievance absolutely focused on the assault and the defendant's contribution to what occurred. To say that in this context summary judgment should be granted because the defendant appeared to say something that is quite at odds with what he said in the grievance is not persuasive. The single statement in the deposition has to be put in context, as reasonable inferences must be drawn in plaintiff's favor, not in the defendant's. First, as we have noted, plaintiff's English is not particularly good: he had an interpreter at the deposition. He cannot write English [Dkt. # 40-2, at 8], and he needed a fellow inmate to fill out the narrative portion of his grievance. [Dkt. # 40-2, at 59]. He understood some of his written grievance, but said that if he read it, he couldn't "read it correctly." [Dkt. # 40-2, at 60]. He can understand English if spoken slowly and can hold conversations if they go slowly. [Dkt. # 40-2, at 8].

When defense counsel had the plaintiff read his grievance, comparison with the filed grievance above shows that he couldn't read it correctly:

> On the above date and time inmate Phil and myself started stealing breakfast and I called the CO and they come to the cell and I explained that what he did in the transmit . . . The inmate tried to scare me. The officer told me he will put me in general population, and I don't know want to GP. The officer had me put my property while my cellmate – I don't.

[Dkt. # 40-2, at 60-61].

Defense counsel stopped plaintiff there, *before the part about being handcuffed and then assaulted,* and said: "Thank you. That was good." [Dkt. # 40-2, at 61]. Defense counsel then asked if it was fair to say that "when I [sic] put my [sic] hands into the door to be cuffed, you said Phil assaulted you. You told the officer to get any property. They did not and more than $200 of your

11

property was stolen?" [Dkt. # 40-2, at 61]. Plaintiff accurately answered "yes" to the narrow question that was asked. [Dkt. # 40-2, at 8].[2] Of course, that answer does nothing for the defense's motion for summary judgment, and whatever plaintiff, who does not speak English very well, may have said at his deposition in response to that question does not change what his grievance and appeal actually said or that they reasonably (and explicitly) provided the Sheriff's Office with notice of plaintiff's failure to protect claim, or the fact that the Sheriff's Office actually considered the claim as one for physical harm as opposed to stolen property.

At least all that is true in the context of a summary judgment proceeding. Beyond that, it has to be said that defense counsel's questioning was not a model of clarity, even if directed to a native English speaker. Defense counsel began asking the plaintiff about his appeals reasons and then seems to conflate that with the original grievance. Counsel, confusingly, switches topics without transition to the grievance. [Dkt. #42-2, at 62].

Counsel even concedes that the plaintiff's appeal reasons include that the "officer held me in" [Dkt. #42-2, at 62], which, of course, drawing permissible inferences in plaintiff's favor, arguably facilitated the assault.[3] And, as already noted, based on the deposition transcript, it must be said that plaintiff is not completely able to read his filings and was going by memory during his testimony. Finally, while it is true, as defendant says, that plaintiff has no constitutional right to court-appointed counsel in civil litigation, *Pennewell v. Parish*, 923 F.3d 486 (7th Cir. 2019);

---

[2] In the context of the issues in this case the underinclusive question was somewhat misleading, and misleading questions are improper. *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 132 (N.D.Ill. 1979).

[3] The plaintiff's "Basis for Appeal" clearly doesn't read "held me in," but – if not completely legibly – "shutting me in." While defense counsel was able to read the phrase as "held me in", in August of 2017, by the time defendant's Reply was filed March 22, 2019, defense counsel found the word "held" or "shutting" to be illegible. [Dkt. # 52, at 5].

*McCaa v. Hamilton*, 893 F.3d 1027, 1030 (7th Cir. 2018), the fact that plaintiff was unrepresented by counsel at the deposition ought not be ignored in the procedural context presented. It does provide further context for plaintiff's testimony at his deposition.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. # 38] is denied.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 5/29/19